ROSEMARY WHITE BODUCH *vs.* AETNA LIFE &
CASUALTY COMPANY.

No. 87-843.

Hampden.    May 6, 1988. — October 13, 1988.

Present: GRANT, PERRETTA, & DREBEN, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Emotional dis-
tress, Insurer. *Actionable Tort.*

A workmen's compensation insurer, in receiving and investigating an em-
ployee's claim for compensation benefits, was acting in furtherance of
the entire compensation program and thus, for purposes of the exclusivity
provision of G. L. c. 152, § 24, occupied the same position as the
employer; consequently, the statute barred an action by the employee
against the insurer seeking consequential damages for the insurer's al-
legedly unfair, deceptive, and tortious handling of her claim. [465-468]

CIVIL ACTION commenced in the Superior Court Department
on December 16, 1982.

The case was heard by *Charles R. Alberti,* J., on a motion
for summary judgment.

*John B. Stewart (Thomas J. Donoghue* with him) for the
plaintiff.

*John D. Lanoue* for the defendant.

PERRETTA, J.   Because the defendant insurer questioned
whether the plaintiff employee had sustained a work-related
back injury, it declined to pay workers' compensation benefits
voluntarily upon receipt of notice of her claim. After the insurer
complied with a payment order by a single member of the
Industrial Accident Board (board), both the plaintiff and the
insurer requested a hearing before another member of the board,
all as allowed under G. L. c. 152, § 7, as in effect in 1981.[1]
Thereafter, the plaintiff brought this action. She alleges that

---

[1] The 1985 amendments to G. L. c. 152 are immaterial to this action.

as a result of the insurer's unfair, deceptive, and tortious conduct in handling her claim for compensation benefits, she suffered "greatly in body and mind" for which she seeks damages independent of her rights under c. 152. The judge concluded that her action was barred by c. 152 and entered summary judgment for the insurer. We affirm.

I. *The Undisputed Facts.*

In ruling on the insurer's motion for summary judgment, the judge had before him the plaintiff's complaint with an attached copy of her demand letter (see G. L. c. 93A, § 9), the insurer's answer with an attached copy of its response to that letter, and its answers to the plaintiff's interrogatories. We have been provided with a stipulation of facts filed pursuant to Mass.R.A.P. 8(e), as appearing in 378 Mass. 934 (1974), which sets out the amounts and dates of compensation benefits paid to the plaintiff by the insurer and complements the judge's memorandum of decision. We relate the undisputed facts as they appear from these documents.

The plaintiff gave notice that on September 30, 1980, she had sustained a back injury at work. The insurer began its investigation of the claim one week later. It did not, however, make any compensation payments to the plaintiff until ordered to do so by a member of the board on May 28, 1981, under G. L. c. 152, § 7, as amended by St. 1980, c. 283. By that order, the insurer was required to pay to the plaintiff $122.47 a week for the period from September 23, 1980 (the date of injury), through May 8, 1981.

It appears from the stipulation of facts that at some unspecified time prior to the board's order, the plaintiff and her employer entered into an agreement whereby the plaintiff received from the employer "wage continuation benefits from September 8, 1980, through January 30, 1981." The insurer complied with the § 7 order on July 2, 1981, by reimbursing the employer in the amount of the payments it had made to the plaintiff under their agreement and by paying the remainder due the plaintiff directly to her. Thus, as of July 2, 1981, the insurer had made all the payments required by the order.

From the plaintiff's c. 93A demand letter and the insurer's response, we learn that both claimed a hearing before another member of the board, as allowed by § 7. That hearing was apparently pending when the plaintiff, through counsel, wrote to the insurer on September 10, 1981, notifying it that as a result of its failure "to make prompt and efficient acceptance" of her claim, she "underwent extraordinary stress which has now resulted in a severe psychiatric disorder." The plaintiff further wrote that she had previously provided the insurer with medical information concerning the "problems engendered by the failure to pay compensation and its relationship to her disability." The letter gave notice that the plaintiff intended to bring suit under c. 93A, seeking damages for the insurer's allegedly unfair and deceptive acts and for the intentional infliction of emotional distress caused by the insurer's actions in respect of her claim.

In responding to that letter on October 13, 1981, the insurer denied the plaintiff's allegations and listed in detail the steps it had taken in investigating her claim and the reasons for its refusal to pay benefits voluntarily. The insurer pointed out that there was contradictory information in the plaintiff's medical history concerning her contention that she had not experienced problems with her back before the injury in question. Moreover, as viewed by the insurer, the plaintiff's medical records pertaining to the present injury did not contain any "real positive findings either orthopedically or neurologically to account for the employee's apparently persistent complaints of pain and disability." In addition to its concerns about the plaintiff's "credibility," the insurer advised the plaintiff that the member's order was not for the payment of benefits "to date and continuing," as had been requested by the plaintiff but was for a specified period and had been complied with fully by the insurer on July 2, 1981.

In a "good faith endeavor to adjust" the dispute, the insurer made the following offer of settlement. Notwithstanding the insurer's "very real question of the causal relationship between the employee's alleged disability and the alleged incident of September 23, 1980," it would withdraw its request for a

hearing before another member of the board if the plaintiff would do likewise. The withdrawals would leave intact the $4,610 in benefits paid by the insurer to the plaintiff and would not "foreclose any additional rights" she might have under c. 152.

II. *Discussion.*

It is the plaintiff's position that any relationship between her work injury and her present complaint is remote and exists in a "but for" sense only. She argues that the direct and proximate cause of her new injury, a psychiatric disorder, is the tortious, unfair, and deceptive manner in which the insurer treated her claim for compensation benefits. Based upon these assertions, she concludes that, because she here seeks damages for an injury which did not arise out of and in the course of her employment, her action against the insurer is not barred by G. L. c. 152, § 24.[2] She views her action as analogous to *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 93 (1987),[3] where the employee was allowed to prosecute a complaint for emotional distress caused by false imprisonment. In allowing the employee to proceed with his action, the court emphasized that the analysis turns on the employee's claim and not on the injury. *Ibid.*

We think *Matthews* v. *Liberty Mut. Ins. Co.*, 354 Mass. 470 (1968), is dispositive of the plaintiff's claim. There an

---

[2] Section 24, as amended through St. 1955, c. 174, § 5, read in relevant part: "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury therein occurring, to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right, or, if the contract of hire was made before the employer became an insured person or self-insurer, if the employee shall not have given the said notice within thirty days of the time said employer became an insured person or a self-insurer."

[3] The plaintiff also relies upon *O'Connell* v. *Chasdi,* 400 Mass. 686 (1987), an action for emotional distress caused by sexual harassment. Judgment was against a coemployee only, and the court found it unnecessary to consider whether the action against the employer would be barred by c. 152. Thus, the issue was "whether . . . [c. 152] bars an action against a fellow employee who commits an intentional tort which was in no way within the scope of employment furthering the interests of the employer." *Id.* at 690 & n.4.

action was brought against the employer's insurer for the negligent performance of its voluntarily assumed duty to inspect the employer's premises and to assist in promoting safety for the employees. The court concluded that the action was barred by § 24 for the reason that when an insurer is engaged in the "performance of a function which furthers the goals of the entire compensation program," 354 Mass. at 473, then the insurer stands in the shoes of the employer, that is to say, the insurer is not "'some person other than the insured' under G. L. c. 152, § 15." *Matthews* v. *Liberty Mut. Ins. Co.*, 354 Mass. at 474. At the time of the injury in *Matthews*, May 10, 1966, the first sentence of § 15, as appearing in St. 1943, c. 432, read in pertinent part: "Where the injury for which compensation is payable was caused under circumstances creating a legal liability in *some person other than the insured* to pay damages in respect thereof, the employee may at his option proceed at law against that person to recover damages or against the insurer for compensation under this chapter, but . . . [with exceptions immaterial to *Matthews* and the instant case] not against both" (emphasis supplied). Thus, where the insurer is performing a function which furthers the goals of c. 152, the insurer and the insured are one, and the exclusivity provision of § 24 applies to both.

Although § 15 was amended subsequent to *Matthews*,[4] there is nothing in those amendments which changed its interaction with § 24, barring suit against an insurer standing in the shoes of the insured. See *Swift* v. *American Mut. Ins. Co.*, 399 Mass. 373, 376-377 (1987). See also Locke, Workmen's Compensation 662 (2d ed. 1981). We think it apparent that the conduct of the insurer at issue here was well within the primary goal of c. 152, that is, to receive and investigate claims and promptly

---

[4] Statute 1971, c. 941, § 1, added the following sentence to § 15, as appearing in St. 1971, c. 888, § 1: "Nothing in this section or in section eighteen or twenty-four shall be construed to bar an action at law for damages for personal injuries or wrongful death by an employee against any person *other than the insured person* employing such employee and liable for payment of the compensation provided by this chapter for the employee's personal injury or wrongful death and said insured person's employees" (emphasis supplied).

provide benefits when it is determined that a worker has suffered a compensable work-related injury. See *Young* v. *Duncan*, 218 Mass. 346, 349 (1914); *Assuncao's Case*, 372 Mass. 6, 9-10 & n.2 (1977).

With respect to the claim asserted by the plaintiff against the insurer, see *Foley* v. *Polaroid Corp.*, 400 Mass. at 93, we see nothing in the undisputed facts to show that the insurer, acting in the insured's behalf, did anything other than that which was contemplated and allowed by c. 152, §§ 7 and 8. The insurer did not refuse to provide benefits. It refused to provide benefits voluntarily, for valid reasons which were stated in full. When ordered to make payments, the insurer fully complied with the order and saved its rights under § 8.

In concluding that the plaintiff's claim is well within the "obvious intent of the exclusiveness clause," *Foley* v. *Polaroid Corp.*, 381 Mass. 545, 552 (1980), we quote at length from 2A Larson, Workmen's Compensation § 68.34(c) (1988): "It seems clear that a compensation claimant cannot transform a simple delay in payments into an actionable tort by merely invoking the magic words 'fraudulent, deceitful and intentional,' or 'intentional infliction of emotional distress' or 'outrageous' conduct in his complaint. The temptation to shatter the exclusiveness principle by reaching for the tort weapon whenever there is a delay in payments . . . is all too obvious, and awareness of this possibility has undoubtedly been one reason for the reluctance of courts to recognize this tort except in cases of egregious cruelty or venality. One final factor may be noted that has figured in many of these cases: the presence in the statute of an administrative penalty for the very conduct on which the tort suit is based. A majority of the courts have taken the view that this evidences a legislative intent that the

remedy for delay in payments, even vexatious delay, shall remain within the system in the form of some kind of penalty."[5]

*Judgment affirmed.*

[5] The plaintiff argues that, because the penalty provided by G. L. c. 152, § 7E, as in effect prior to St. 1985, c. 572, § 18 (see now, G. L. c. 152, § 7[2]), is inadequate to compensate her for her injuries caused by the insurer's alleged delay, public policy favors an override of exclusiveness. Any inadequacy in the penalty provision does not transform the nature of the plaintiff's claim and is, in any event, a legislative matter. See Larson, *supra*.