HELEN KELLY *vs.* RAYTHEON, INC., & another.[1] No. 89-P-626. December 11, 1990. *Workers' Compensation Act*, Injuries to which act applies, Emotional distress, Insurer. *Actionable Tort. Consumer Protection Act*, Availability of remedy, Insurance.

In August, 1977, Helen Kelly suffered an emotional breakdown following the termination of her position at Raytheon, Inc., and subsequently she claimed that her emotional difficulties constituted personal injuries arising out of and in the course of her employment. She filed a claim for temporary total incapacity with the Industrial Accident Board (IAB) on February 15, 1979. Years of litigation followed, which we outline below, culminating in an opinion of this court in 1984, see *Kelly's Case*, 17 Mass App. Ct. 727, and an opinion of the Supreme Judicial Court in 1985, see 394 Mass. 684. The Superior Court and both appellate courts agreed that Kelly's injury was compensable under G. L. c. 152, § 26.

Meanwhile, on November 8, 1983, the Superior Court ordered Liberty Mutual Insurance Company (Liberty) to pay the judgment (representing the benefits, plus interest, to which Kelly was entitled under G. L. c. 152, §§ 34 and 51A) previously entered in favor of Kelly. When Liberty, which was then pursuing its appeal, did not respond to the order to pay, a judgment on Kelly's complaint for contempt was entered on January 26, 1984. Approximately fifty percent of the judgment was then paid to Kelly, but it was not until January, 1987, that the Superior Court judgment was paid in full to the satisfaction of all parties.

In September, 1986, Kelly made a fresh claim for permanent and total disability benefits under § 34A, and an order favorable to Kelly was entered on May 27, 1987. Liberty has claimed an appeal from that decision, and so far as we know that appeal remains pending. However, we were informed by Kelly's counsel on October 5, 1990, that in March of 1988 Kelly received her first weekly compensation check.

---

[1]Liberty Mutual Insurance Company.

Finally, in January, 1988, Kelly filed the present action against Raytheon and Liberty claiming intentional infliction of emotional distress, negligent infliction of emotional distress, damages under G. L. c. 93A, and punitive damages, all stemming from the defendant's failure to pay Kelly "the full compensation owed her" from August, 1982, to January, 1987, and to pay certain expenses she incurred from August, 1982, to January, 1988.

A judge of the Superior Court allowed the defendants' motion to dismiss. He concluded that the action was barred by the exclusivity provisions of G. L. c. 152, § 24, which provides that an employee shall be held to have waived the employee's right of action at common law or under the law of any other jurisdiction to recover damages for personal injuries if, at the time of hire, the employee shall not have given the employer written notice that the employee claimed such right.[2] We agree and affirm the judgment.

This case is governed by the main features of *Boduch* v. *Aetna Life & Cas. Co.*, 26 Mass. App. Ct. 462 (1988), where we held that (i) the insurer is entitled to the benefits of § 24 whenever the insurer is "performing a function which furthers the goals of c. 152 . . .," *id.* at 466, and (ii) an employee's G. L. c. 93A action to recover damages based on psychic injury resulting from delays in payment is barred by § 24. Liberty, as well as Raytheon, qualifies for the protection of § 24. See *Boduch, supra* at 466-467.

---

[2] Chapter 152, § 24, as amended through St. 1986, c. 662, § 18, reads as follows:

"An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right, or, if the contract of hire was made before the employer became an insured person or self-insurer, if the employee shall not have given the said notice within thirty days of the time said employer became an insured person or self-insurer. An employee who has given notice to his employer that he claimed his right of action as aforesaid may waive such claim by a written notice, which shall take effect five days after it is delivered to the employer or his agent. The notices required by this section shall be given in such manner as the department may approve. If an employee has not given notice to his employer that he preserves his right of action at common law as provided by this section, the employee's spouse, children, parents and any other member of the employee's family or next of kin who is wholly or partly dependent upon the earnings of such employee at the time of injury or death, shall also be held to have waived any right of action at common law against such employer for damage due to loss of consortium, parental guidance, companionship or the like, when such loss is a result of any injury to the employee that is compensable under this chapter."

Adopting a passage from 2A Larson, Workmen's Compensation § 68.34(c) (1988), *Boduch* accepted the idea that a delay in payment may even be "vexatious" and still the employee's action could not be maintained. *Boduch, supra* at 467-468. That, no doubt, was obiter dictum, for in *Boduch* the insurer's refusal to provide benefits voluntarily (payments were made only after the order of court) was "for valid reasons which were stated in full [to the employee]." *Id.* at 467. Here, payments were not made even after a court order; a contempt petition was required, and even after that there were additional delays — although in the end we understand that all payments were made and with interest. Nevertheless, it may well be that here the insurer's delays in payment were not for "valid reasons."

Even if we assume that the delays in payment were "vexatious," that is to say, not in good faith (Count I), or intentional (Count II), or negligent (Count III), or unfair (Count IV), we do not reach any different result from that reached in *Boduch*. Both before and after the 1985 amendments, (see St. 1985, c. 572) chapter 152 contained provisions assessing penalties on the insurer for delayed payments. Prior to the 1985 amendments, those provisions were in § 7E; after the amendments, the provisions are to be found in §§ 7(2) and 8(5) and, in the event of fraud, § 14(2).

The assessment of a statutory penalty on the insurer for delayed payment of benefits presumes that the failure was to make a payment required under c. 152 (both §§ 7[2] and 8[5] so state), and that that failure was without justification. In that context, to say that the failure to pay was "vexatious," or not in good faith, or intentional, or negligent, or unfair, adds nothing of substance to the claim that the delay was not justified. Thus, the distinction to be made is not among variously characterized claims against any employer arising out of delayed payment of benefits; rather, the need is to distinguish those claims that arise out of events unrelated to the subject matter of c. 152, see, e.g., *Foley* v. *Polaroid Corp.,* 400 Mass. 82, 93 (1987) (claims arising out of false imprisonment of employee not barred by § 24), from those that arise out of and in the course of employment. See G. L. c. 152, § 26. Compare *Barrett* v. *Rodgers,* 408 Mass. 614 (1990). This is because, as Larson, *supra,* suggests in § 68.34(c), the exclusivity provisions of § 24, in conjunction with the provisions in c. 152 which provide for penalties for delayed payments, reveal a legislative intent that the remedies provided by c. 152 for violations of that chapter should remain within the system and should be exclusive of all other common law and statutory remedies.

Here, as in *Boduch*, the touchstone of the claim is the delay in the payment of benefits, and Kelly's effort to distinguish *Boduch* on the ground of the extraordinary duration and intensity of the dispute between the parties is inadequate to overcome the plain legislative scheme. Kelly's remedies are to be found in §§ 7(2) and 8(5) (formerly § 7[E]). The result is that § 24 bars the maintenance of this action as it did *Boduch*.

*Judgment affirmed.*

*Alan M. Pampanin* for the plaintiff.
*Joseph H. Caffrey* (*Joseph Fidler* with him) for the defendants.