**Josie Ann GUNDERSON, Plaintiff and Appellant,**

v.

**MAY DEPARTMENT STORES COMPANY; and Payless Shoe Source, Inc., Defendants and Appellees.**

**No. 970178–CA.**

Court of Appeals of Utah.

March 19, 1998.

---

Leonard E. McGee, Salt Lake City, for Plaintiff and Appellant.

Lynn S. Davies and Elizabeth A. Hruby–Mills, Salt Lake City, for Defendants and Appellees.

Before DAVIS, P.J., and BILLINGS and GREENWOOD, JJ.

## OPINION

BILLINGS, Judge:

Appellant Josie Ann Gunderson appeals the trial court's summary judgment dismissing her bad faith and negligent infliction of emotional distress claims against her former employer May Department Stores Company. We affirm.

## FACTS

This dispute arises out of an injury suffered by Gunderson while employed by Payless Shoe Source, a wholly owned subsidiary of May Department Stores. Payless is a self-insured employer under the Utah Workers' Compensation Statute, Utah Code Ann. §§ 35–1–1 to –1–109 (1995). Workers' compensation claims for Payless, as well as other May subsidiaries, are administered by May Department Stores' Western Regional Claims Office.

On January 20, 1991, Gunderson was assaulted and severely injured during a robbery of the Payless store where she worked. As a result of the assault, Gunderson ended her employment at Payless and filed a workers' compensation claim against May Department Stores. Between 1991 and 1993, Gunderson incurred substantial medical bills for reconstructive surgery, psychiatric counseling, and treatment of post-traumatic stress syndrome. May Department Stores did not pay these bills, and Gunderson therefore requested a hearing before the Utah Labor Commission.

On January 13, 1994, the Labor Commission issued a formal order requiring May Department Stores to pay: (1) temporary total disability benefits of $9,064.29 with accrued interest; (2) permanent partial disability benefits of $2,808.00, and; (3) all reasonable and necessary medical expenses and specified future psychological and dental claims. May Department Stores did not contest this order. Nonetheless, May Department Stores did not pay Gunderson's medical claims until after Gunderson filed this case in the district court.

Gunderson alleges that she suffered severe emotional distress as a result of May Department Stores' failure to pay her medical

claims. She ascribes this distress to knowing that there were unpaid bills outstanding, being "hounded" by creditors, and having to call the credit bureau to correct an impaired credit rating. However, Gunderson concedes that May Department Stores did not commit any additional act beyond delay of payment.

On March 30, 1994, Gunderson brought an action for contractual breach of the covenant of good faith and fair dealing and negligent infliction of emotional distress against May Department Stores. The trial court granted summary judgment in favor of May Department Stores. Gunderson now appeals the trial court's grant of summary judgment.

## ANALYSIS

This case raises three issues. First, does the Utah Workers' Compensation Act provide the exclusive remedy for a covered employee whose former employer has failed to timely pay workers' compensation benefits awarded by the Utah Labor Commission? Second, can a covered employee maintain a contractual claim for bad faith against a company that is self-insured under the Utah Workers' Compensation Act? Third, can a covered employee maintain a claim for negligent infliction of emotional distress arising out of failure to timely pay workers' compensation claims? Because we conclude that the Utah Workers' Compensation Act provides the exclusive remedy for both Gunderson's causes of action, we do not reach issues two and three.

■ Gunderson argues that her claims for delayed payment of compensation benefits are not barred by the exclusive remedy provision of the Workers' Compensation Act. This is an issue of first impression in Utah.[1]

The Utah Workers' Compensation Act provides the exclusive remedy for injuries occurring in the course of or arising out of a covered worker's employment. This rule is stated in section 35–1–60 of the Act:

> The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, shall be the exclusive remedy against any officer, agent, or employee of the employer and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever, at common law or otherwise, to the employee ... or any other person whomsoever, on account of any accident or injury or death, in any way contracted, sustained, aggravated, or incurred by such employee in the course of or because of or arising out of his employment, and no action at law may be maintained against an employer or against any officer, agent, or employee of the employer

---

1. Two recent Utah Supreme Court cases have acknowledged in dicta the possibility of causes of action for bad faith or independent torts in workers' compensation late payment cases. In *Savage v. Educators Ins. Co.*, 908 P.2d 862 (Utah 1995), a school district employee sued the district's insurance administrator for breach of the covenant of good faith and fair dealing in processing her workers' compensation claims. The court concluded that Savage could not sue the insurance company because as a third party claimant she was not party to the insurance contract, and the duties of good faith and fair dealing arose only out of the contractual relationship between insured and insurer. *See id.* at 866. However, the court noted in dicta that:

> we do not foreclose the possibility that such a claimant could state a cause of action for an independent tort ... For example, the law of this state recognizes a duty to refrain from intentionally causing severe emotional distress to others.... Thus, intentional and outrageous conduct by an insurer against a third

party claimant could conceivably result in separate tort liability.

*Id.* at 866 n. 4.

In *Sheppick v. Albertson's, Inc.*, 922 P.2d 769 (Utah 1996), the supreme court faced a similar claim by a former employee that his self-insured employer had violated an implied contractual duty of good faith and fair dealing and had intentionally inflicted severe emotional distress by refusing to pay medical expenses allegedly covered by workers' compensation. *See id.* at 772–73. The court did not reach these claims because it found that the Labor Commission had made no final order awarding the disputed expenses. *See id.* at 774. However, the court in dicta stated:

> Whether it could be said that plaintiff [a covered employee] stands in privity with his [self-insured] employer for purposes of a claim for breach of an implied covenant of good faith and fair dealing is an issue that we need not decide ... nor need we decide whether plaintiff would have a tort action for the conduct of a recalcitrant self-insured employer.

*Id.* at 776 n. 3.

based on any accident, injury or death of the employee.

Utah Code Ann. § 35–1–60 (1995). Thus, under section 35–1–60, an employee has no remedy beyond workers' compensation for any injury covered by the statute. The workers' compensation system represents a quid pro quo arrangement between employees and employers. Employers agree to insure covered employees against industrial accidents regardless of fault in return for the security that their liability for negligently caused injuries will be limited to workers' compensation awards. Thus, the Utah Supreme Court has stated that "[t]he essence of a workers' compensation system is that it is a mutual arrangement between employer and employee whereby both parties give up and gain certain advantages." *Bingham v. Lagoon Corp.*, 707 P.2d 678, 679 (Utah 1985). By substituting a system of administrative remedies for traditional common law remedies, workers' compensation statutes " 'provide speedy and certain compensation for workmen and their dependents and . . . avoid the delay, expense, and uncertainty [of litigation],' " while at the same time " 'protecting the employer from the hazards of exorbitant and in some instances perhaps ruinous liabilities.' " *Lantz v. National Semiconductor Corp.*, 775 P.2d 937, 938 (Utah Ct.App.1989) (citation omitted).

In *Savage*, the Utah Supreme Court acknowledged in dicta the problems in making late payment cases an exception to the exclusive remedy provision of the Workers' Compensation Act. *See Savage*, 908 P.2d at 866.

There the court emphasized that "recognizing a cause of action in favor of employees against an insurer for the manner in which it adjusted a claim is inconsistent with the workers' compensation scheme and could do substantial harm to the workers' compensation system as a whole." *Id.* at 867 (*citing Sullivan v. Liberty Mut. Ins. Co.*, 367 So.2d 658, 660–61 (Fla.Dist.Ct.App.1979).

A clear majority of other jurisdictions have held that the exclusive remedy provisions of their workers' compensation statutes bar employee suits based solely on delayed payment.[2] These jurisdictions have generally focused on the genesis of delayed payment claims in employment injuries. *See, e.g., Roy Horton Tomato Co. v. Home Ins. Co.*, 683 F.Supp. 714, 716 (E.D.Ark.1988) (barring bad faith claim against insurer because claim's "true nature" was improper denial of workers' compensation benefits); *Argonaut Ins. Co.*, 210 Cal.Rptr. at 419 (holding claims of delayed payment, refused treatment, and resulting aggravation of injuries remained in exclusive jurisdiction of workers' compensation board).

Most significantly, a majority of jurisdictions have held that when the applicable workers' compensation statute includes a penalty for delay of payments, this penalty expands the act's exclusive remedy provision to bar actions for nonpayment or late payment of claims.[3] This position is in keeping with the basic principle, noted above, that the addition of employer or carrier penalties to a

2. *See* 6 Arthur Larson, The Law of Workmen's Compensation, § 68.34(c) (1997); *see also Hall v. C & P Tel. Co.*, 809 F.2d 924 (D.C.Cir.1987); *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, *reh'g denied*, 844 F.2d 788 (5th Cir.1988); *Sample v. Johnson*, 771 F.2d 1335 (9th Cir.1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986); *Goetz v. Aetna Casualty & Sur. Co.*, 710 F.2d 561 (9th Cir.1983); *Bright v. Nimmo*, 756 F.2d 1513 (11th Cir.1985); *Shepherd v. Boston Old Colony Ins. Co.*, 811 F.Supp. 225 (D.Miss.1992); *Bearden v. Equifax Serv.*, 455 So.2d 836 (Ala.1984); *Hays v. Continental Ins. Co.*, 172 Ariz. 573, 838 P.2d 1334 (Ariz.Ct.App. 1992); *Cain v. National Union Life Ins. Co.* 290 Ark. 240, 718 S.W.2d 444 (1986); *Smith v. Rockwood Ins. Co.*, 684 F.Supp. 607 (E.D.Ark.1988); *Argonaut Ins. Co. v. Landeryou*, 164 Cal.App.3d 320, 210 Cal.Rptr. 417 (1985); *Sullivan v. Liberty Mut. Ins. Co.*, 367 So.2d 658 (Fla.Dist.Ct.App.

1979); *Kelly v. Raytheon, Inc.*, 29 Mass.App.Ct. 1000, 563 N.E.2d 1372 (1991); *Wood v. Union Elec. Co.*, 786 S.W.2d 613 (Mo.Ct.App.1990); *Carlson v. Anaconda Co.*, 165 Mont. 413, 529 P.2d 356 (1974); *Dickson v. Mountain States Mut. Casualty Co.*, 98 N.M. 479, 650 P.2d 1 (1982); *Kuney v. PMA Ins. Co.*, 525 Pa. 171, 578 A.2d 1285 (1990).

3. This view is endorsed by Larson, who states:

When a penalty has been built into the compensation act for any kind of employer conduct, the boundaries of the exclusiveness principle are expanded to take in that conduct. The effect may thus be to bar common law suits for a wider range of intentional, willful, or aggravated injuries by the employer.

6 Larson, § 69.30.

workers' compensation act expands the scope of the act's exclusive remedy provision to cover the penalized actions. *See, e.g., Raytheon, Inc.,* 563 N.E.2d at 1372 (holding exclusive remedy provision of workers' compensation act protected employer from claim for intentional infliction of emotional distress arising from nonpayment of compensation); *Kuney,* 578 A.2d 1285 (holding exclusive remedy provision of workers' compensation act protected employer who had used fraud to deprive injured employee of benefits).

We find *Kuney* and *Raytheon* highly persuasive. In *Kuney,* the Pennsylvania Supreme Court addressed a claim for damages arising from an insurer's bad faith failure to pay workers' compensation benefits. *See* 578 A.2d at 1286–87. The court employed the following rationale to hold that the Pennsylvania workers' compensation statute provided the claimant's sole remedy:

> Reduced to its essence, the appellee's claim is that the insurance company *wrongfully delayed his receipt of compensation benefits. This is clearly a matter pertaining to a workers' compensation claim and must therefore be adjudicated within the framework of the statute, which,* as stated above, has specific remedies for such a grievance.... It is fruitless to argue that the appellee nevertheless failed to receive *full* indemnification for the injury he suffered through the insurance company's allegedly fraudulent handling of his claim. Benefits payable under the Workmen's Compensation Act are *normally the limit of a worker's recovery even though compensatory damages in a tort action might be much higher....* We have long recognized that the adequacy of [workers'] compensation [awards] is solely a matter for the legislature.

*Id.* at 1287.

The Massachusetts Appeals Court rejected a similar claim in *Raytheon. See* 563 N.E.2d at 1373. There, an insurer refused to pay a workers' compensation award until the trial court issued a contempt order. *See id.* The appeals court stated that, however egregious the insurer's delay of payment, its obvious bad faith "adds nothing of substance to the claim that the delay was not justified." *Id.* at 1374. Thus, the court reasoned that

> the exclusivity provisions [of the Massachusetts worker's compensation statute] in conjunction with the ... penalties for delayed payments, reveal a legislative intent that the remedies [for delayed payment] should remain within the system and should be exclusive of all other common law and statutory remedies.... [T]he touchstone of [this] claim is the delay in the payment of benefits, and ... [even] the extraordinary duration and intensity of the dispute between the parties is inadequate to overcome the plain legislative scheme.

*Id.* at 1374–75.

The Utah Workers' Compensation Act imposes several penalties on employers who delay payment of medical and disability expenses awarded by the Labor Commission. While not all these provisions function to compensate injured employees, several of them do provide remedies that appear to bring delayed payment of compensation claims within the coverage formula of the Utah statute.

First, section 35–1–78(2) of the Act states that "awards made by the Labor Commission shall include interest at the rate of 8% per annum from the date when each benefit payment would otherwise have become due and payable." Utah Code Ann. § 35–1–78(2) (1995). This section provides mandatory compensation to employees for late payment of workers' compensation awards. Several Utah cases have recognized that the effect and intent of this provision is not merely to penalize insurers for late payments, but also to compensate injured employees. Thus, we have held that claimants are entitled to interest on every workers' compensation award because the "interest statute was 'a legislative attempt to remedy a serious social problem: the depreciation of the value of benefits as a result of non-receipt ... for months, or perhaps years, until a final determination of eligibility and an award are made.'" *Broadbent v. Industrial Comm'n,* 849 P.2d 1195, 1196 (Utah Ct.App.1993) (quoting *Marshall v. Industrial Comm'n,* 704 P.2d 581, 583 (Utah 1985)).

Second, section 35–1–12 of the Act requires the Labor Commission to increase benefit awards to penalize noncompliant employers: "Where injury is caused by the willful failure of an employer to comply with the law or any lawful order of the industrial commission, compensation as provided for in this title shall be increased fifteen percent, except in case of injury resulting in death." Utah Code Ann. § 35–1–12 (1995). Thus any employee whose insurer fails to pay an award is entitled to receive a 15% increase in the award.

Finally, the supreme court noted in *Savage, see* 908 P.2d at 867, that both the Act and the Labor Commission's administrative regulations provide additional penalties for self-insured employers who fail to properly administer workers' compensation claims. These penalties range from the possible revocation of an employer's Certificate of Self-Insurance under Rule 568–1–14(C) of the Utah Administrative Code to prosecution for the misdemeanor of violating a Commission order under Utah Code Ann. § 35–1–39 (1995). *See Savage*, 908 P.2d at 867.

Most jurisdictions have allowed bad faith actions arising from delayed compensation payments only when the delayed payments were accompanied by egregious misconduct that effectively transformed failure to pay into an intentional tort not barred by statute. *See, e.g., McCutchen v. Liberty Mut. Ins. Co.,* 699 F.Supp. 701, 710 (D.Ind.1988) (holding insurer's mockery of claimant while repeatedly refusing to pay psychiatric treatment claims rose to level of separate tort committed during claim settlement and was not barred by workers' compensation statute); *Continental Cas. Ins. Co. v. McDonald,* 567 So.2d 1208, 1219 (Ala.1990) (stating delay of payment cannot give rise to tort action unless delay is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as utterly intolerable in a civilized soci-

ety"); *Young v. Hartford Accident and Indem. Co.,* 303 Md. 182, 492 A.2d 1270, 1277 (1985) (holding claimant stated cause of action when she alleged insurance carrier forced her to submit to psychiatric exam with sole purpose of making her abandon her claim or commit suicide). The Utah Supreme Court acknowledged these "late payment plus" cases in *Savage*, stating

> we do not foreclose the possibility that such a claimant could state a cause of action for an independent tort.... For example, the law of this state recognizes a duty to refrain from intentionally causing severe emotional distress to others. Thus, intentional and outrageous conduct by an insurer against a third party claimant could conceivably result in separate tort liability.

908 P.2d at 866 n. 4 (citations omitted).

Thus, case law from the majority of jurisdictions suggests the following principles regarding liability for delayed payment of workers' compensation claims. First, a cause of action generally will not arise from delayed payment of a workers' compensation claim unless the insurer or self-insured employer has committed offenses greater than mere delay of payment. Second, the existence of a penalty for late payment of claims generally indicates that the Legislature intended to expand a statute's exclusive remedy provision to bar bad faith claims arising from delayed payment. Third, even where the statutory penalties do not adequately compensate the · employee for damages caused by late payments, the imposition of a penalty reveals a legislative intent to preempt common law causes of action.[4]

In the case before us, Gunderson has not alleged any facts beyond mere delay of payment. Thus, this is not a case in which the insurer-employer committed additional egregious acts during claims settlement that elevated delay of payment to the level of an

---

4. A minority of jurisdictions, however, have allowed bad faith claims despite the existence of statutory penalties. In general, these jurisdictions have based their conclusions on two factors: the failure of the relevant statutes to identify specific penalties for bad faith or tortious delay of payment, and the failure of provided

penalties to adequately compensate employees for the real harms suffered as a result of delayed payments. *See, e.g., Gibson v. National Ben Franklin Ins. Co.,* 387 A.2d 220 (Me.1978); *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210 (Tex.1988); *Coleman v. American Universal Ins. Co.,* 86 Wis.2d 615, 273 N.W.2d 220 (1979).

intentional tort.[5] Unlike claimants in cases where courts have found the commission of independent intentional torts or outrageous conduct, Gunderson was never denied medical treatment, and she presented no evidence that the insurer delayed payment in order to pressure her into abandoning her claims or accepting a reduced settlement. On the contrary, May Department Stores ultimately paid Gunderson the full award with interest that the Labor Commission granted her.[6]

■ Furthermore, Gunderson does not even allege an intentional tort. Her second cause of action is for *negligent* infliction of emotional distress. It is well established under Utah law that the exclusive remedy provision of the Workers' Compensation Act stands as a total bar to negligence suits against covered employers and insurance carriers. *See Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1059 (Utah 1991) (stating "cause of action for damages for negligent infliction of emotional distress . . . would clearly come within the purview of the Workers' Compensation Act"). In Utah, as in the majority of jurisdictions, an employer cannot be independently liable for a work-related injury unless the employer possessed "a conscious and deliberate intent directed to the purpose of inflicting injury." *Lantz,* 775 P.2d at 939 (citing 2A Larson, § 68.13).

Gunderson has suffered an injury—late payment of a compensation award—that is already addressed by the Utah statute. Like the claimants in *Kelly* and *Kuney,* Gunderson has alleged nothing more than a negligent delay of payment, a violation for which the Utah Workers' Compensation Act provides specific remedies. We follow the majority of our sister states and hold that our Workers' Compensation Act bars Gunderson's claims of bad faith and negligent infliction of emotional distress based solely on the late payment of her workers' compensation claims.

## CONCLUSION

We hold that the unexplained delay in payment of Gunderson's workers' compensation claims is an injury covered by the Utah Workers' Compensation Act. Consequently, the Act provides Gunderson's exclusive remedy, and we do not reach the other issues raised in this case. We affirm.

DAVIS, P.J., and GREENWOOD, J., concur.

---

5. Such an approach would be entirely consistent with Utah law on breach of insurance contracts, which recognizes the possibility of independent torts arising in connection with a breach of the contractual duty of good faith and fair dealing. *See Beck v. Farmers Ins.,* 701 P.2d 795, 801 n. 4 (Utah 1985) (stating, while insurer bad faith is not itself a tort, "in some cases the acts constituting breach of contract may also result in breaches of duty that are independent of contract and may give rise to causes of action in tort").

6. Furthermore, Gunderson never returned to the Labor Commission to request imposition of the 15% penalty for unjustified failure to pay claims under section 35–1–12. Thus, any judicial grant of damages in this case would allow Gunderson to sidestep the clearly articulated administrative remedies provided by the Worker's Compensation Act.