JOHN FLEMING & others[1] *vs.* NATIONAL UNION FIRE
INSURANCE COMPANY & another.[2]

Suffolk. September 8, 2005. - November 23, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Jurisdiction. Workers' Compensation Act,* Average weekly wages, Jurisdiction
of court, Employer's misconduct.

This court concluded that the procedures and remedies set forth in the
comprehensive statutory scheme of the Workers' Compensation Act, G. L.
c. 152, governed a claim by plaintiff employees, brought pursuant to G. L.
c. 93A, for alleged violations of G. L. c. 176D by the defendants (the
plaintiffs' workers' compensation insurer and its claims processing
company) in their handling of the plaintiffs' claims for workers' compensa-
tion benefits and, consequently, that the Superior Court did not have
subject matter jurisdiction over the plaintiffs' cause of action. [383-387]

CIVIL ACTION commenced in the Superior Court Department on
January 9, 2004.

A motion to dismiss was heard by *Paul E. Troy,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Timothy Wilton* for the plaintiffs.

*Myles W. McDonough* for the defendants.

SPINA, J. The plaintiffs, three workers on the Central Artery/
Harbor Tunnel construction project (Big Dig), were injured dur-
ing the course of their employment and were paid benefits
under the Workers' Compensation Act (Act), G. L. c. 152, by
their workers' compensation insurer, National Union Fire Insur-
ance Company, and its claims processing company, AIG Claim
Services, Inc. (collectively, the defendants). On January 9, 2004,

---

[1]Edward Cannon and Thomas McQuillan. The plaintiffs filed their complaint
on behalf of themselves and a class of similarly situated persons. However, at
no point has this case been certified as a class action.

[2]AIG Claim Services, Inc.

the plaintiffs brought an action against the defendants for monetary and injunctive relief, alleging that for purposes of determining an injured employee's level of workers' compensation benefits, the defendants' practice of computing "average weekly wages" without including the value of certain fringe benefits constituted an unfair and deceptive business practice in violation of G. L. c. 176D and G. L. c. 93A.[3] The plaintiffs further alleged that the defendants engaged in unfair or deceptive business practices when they (1) misrepresented to the plaintiffs that their workers' compensation benefits were significantly less than those to which they were entitled pursuant to G. L. c. 152, § 1 (1), and G. L. c. 149, §§ 26, 27; (2) paid the plaintiffs benefits that did not include the value of certain fringe benefits; (3) compelled the plaintiffs to litigate their claims in order ultimately to receive the benefits to which they were entitled and which included the value of certain fringe benefits; and (4) delayed payment of the correct amount of benefits, thereby depriving the plaintiffs of the use of those funds.

The defendants filed a motion to dismiss the plaintiffs' complaint under Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), for lack of subject matter jurisdiction, or, alternatively, under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for failure to state a claim on which relief could be granted. A judge in the Superior Court allowed the defendants' motion based on lack of subject matter jurisdiction, concluding that the Legislature intended violations of G. L. c. 152 to be remedied within the comprehensive statutory and regulatory framework of the Act, and that the exclusivity provision of G. L. c. 152, § 24, barred the plaintiffs' cause of action. We granted the plaintiffs' application for direct appellate review. At issue is whether the Superior Court had subject matter jurisdiction over the plaintiffs' action, brought pursuant to G. L. c. 93A, for alleged violations of G. L. c. 176D by the defendants in their handling of the plaintiffs' claims for workers' compensation

---

[3]The manner in which "average weekly wages" are calculated is set forth in G. L. c. 152, § 1 (1). The types of fringe benefits that the plaintiffs assert should have been included in their "average weekly wages" are "health insurance plans, pensions, day care, or education and training programs provided by employers." *Id.*

benefits. For the reasons that follow, we affirm the judgment of dismissal.

1. *Comprehensive framework of G. L. c. 152.* The thrust of the plaintiffs' argument is that this case is more than a mere administrative dispute over the calculation of workers' compensation benefits for injured employees of the Big Dig. The plaintiffs contend that the defendants engaged in unfair or deceptive claim settlement practices, in violation of G. L. c. 176D, § 3 (9),[4] and point out that "any person whose rights are affected by another person violating the provisions of [G. L. c. 176D, § 3 (9),] may bring an action in the superior court" for relief under G. L. c. 93A. G. L. c. 93A, § 9 (1). The plaintiffs' argument misses the mark. While G. L. c. 176D generally addresses unfair or deceptive acts and practices in the business of insurance, the Legislature's enactment of workers' compensation legislation in 1911 created "rights and remedies and procedure all its own, not previously known to the common or statutory law." *Ahmed's Case,* 278 Mass. 180, 184 (1932). The Legislature periodically has made substantial revisions to such rights, remedies, and procedure, but they remain the backbone of a largely self-contained system designed specifically to protect injured workers. See, e.g., St. 1985, c. 572; St. 1991, c. 398. Notwithstanding the plaintiffs' contention that the defendants' actions in handling their workers' compensation claims constituted unfair or deceptive business practices, their cause of action is still fundamentally encompassed within the overarching workers' compensation framework.

"[E]nacted as a 'humanitarian measure' in response to strong public sentiment that the remedies afforded by actions of tort at common law did not provide adequate protection to workers," *Neff* v. *Commissioner of the Dep't of Indus. Accs.,* 421 Mass.

---

[4]"An unfair claim settlement practice shall consist of any of the following acts or omissions: (*a*) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; (*b*) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; . . . (*f*) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (*g*) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds . . . ." G. L. c. 176D, § 3 (9).

70, 73 (1995), the purpose of the Act is "to ensure that employees, who give up their rights to sue employers in tort, will recover lost wages and lost earnings capacity and medical expenses resulting from work-related injuries, regardless of fault or forseeability." *Id.* at 75. See *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 27 (1979). There are four procedural stages of a workers' compensation dispute. See *Murphy* v. *Commissioner of the Dep't of Indus. Accs.*, 415 Mass. 218, 223-225 (1993). First, there is an initial informal conciliation proceeding. See G. L. c. 152, § 10 (1); 452 Code Mass. Regs. § 1.08 (1998). Second, if the claimant and the insurer do not reach an agreement, the case is referred to the Industrial Accident Board (board) for a conference before an administrative judge of the division of industrial accidents (department). See G. L. c. 152, §§ 10 (2), 10A (1); 452 Code Mass. Regs. § 1.10 (1998). Third, a party aggrieved by the administrative judge's decision may request a full evidentiary hearing of the party's claim. See G. L. c. 152, §§ 10A (3), 11; 452 Code Mass. Regs. § 1.11 (1997). Fourth, the aggrieved party may appeal to the reviewing board of the department, which consists of a panel of three administrative law judges. See G. L. c. 152, § 11C; 452 Code Mass. Regs. § 1.15 (1993). An appeal from a decision of the reviewing board must be filed with the Appeals Court, and a party may seek enforcement of an order of the reviewing board in the Superior Court. See G. L. c. 152, § 12. An employee is presumed to be subject to the provisions of the Act unless he gives written notice to his employer that he reserves his rights at common law, or under the law of any other jurisdiction, to recover damages for compensable personal injuries. See G. L. c. 152, § 24. "It was undoubtedly the intention of the Legislature . . . to take away from employees who should become subject to [the Act's] provisions all other remedies that they had against their employers for injuries happening in the course of their employment and arising therefrom, and to substitute for such remedies the wider right of compensation given by the [A]ct." *King* v. *Viscoloid Co.*, 219 Mass. 420, 422 (1914).

The department is under the supervision and control of a commissioner who is vested with the authority to promulgate

rules and regulations, consistent with the provisions of G. L. c. 152, for carrying out the functions of the department. See G. L. c. 152, § 5; G. L. c. 23E, § 1. The department is comprised of two divisions, a division of administration and a division of dispute resolution. See G. L. c. 23E, § 3 (*a*). The responsibilities of the division of administration under G. L. c. 152 include, inter alia, "investigating written allegations of questionable claims handling techniques or patterns of unreasonably controverting claims by insurers, employers or other entities handling workers' compensation claims and referring its findings to the commissioner of insurance and the party alleging such techniques or patterns." G. L. c. 23E, § 3 (*b*) (8). The department has promulgated regulations specifying that "questionable claims handling techniques or patterns of unreasonably controverting claims" shall include, but not be limited to, "misrepresenting pertinent facts or policy provisions relating to coverage, entitlement to benefits under [G. L.] c. 152, or any other material facts or provisions pursuant to [G. L.] c. 152, or for any other purpose." 452 Code Mass. Regs. § 7.04(3)(a) (1994). Once the division of administration has received such written allegations, it shall conduct an investigation, give the party against whom the allegations have been made an opportunity to respond in writing within thirty days, and report its findings to the Commissioner of Insurance, who will then "undertake such enforcement, license revocation, and/or other actions as may be applicable by law." 452 Code Mass. Regs. § 7.04(4) (1994). See 452 Code Mass. Regs. § 7.04(2) (1994).

In light of this comprehensive statutory and regulatory scheme that affords injured workers the opportunity to contest benefit determinations and payment practices, we conclude that employees who want to challenge the manner in which their workers' compensation benefits are calculated, and who believe that their employer or its insurer has engaged in questionable claims handling techniques, have an avenue for obtaining redress with respect to alleged misconduct. Contrary to the plaintiffs' argument, the Act and its related regulations were designed to address the types of claims that the plaintiffs have asserted here. Given the breadth of the workers' compensation framework, it is evident that the Legislature intended employees

to seek relief for purported unfair or deceptive business practices in the workers' compensation realm through G. L. c. 152, and not by way of action pursuant to G. L. c. 93A.[5] As such, the Superior Court had no subject matter jurisdiction over the plaintiffs' claims.

We recognize that some Massachusetts laws regulating business or industry specifically state that a violation of their provisions constitutes an unfair or deceptive act or practice under G. L. c. 93A. See, e.g., G. L. c. 93, § 49 (engaging in unfair, deceptive, or unreasonable debt collection practices constitutes violation of G. L. c. 93A); G. L. c. 93, § 68 (failing to comply with statutory provisions governing consumer credit reporting constitutes unfair trade practice in violation of G. L. c. 93A). In these instances, the plain language of the specific statute provides that a violation of such statute also constitutes a violation of G. L. c. 93A. There is no analogous language in the Act. See G. L. c. 152.

Other industry-regulating statutory schemes, such as the one relied on by the plaintiffs, G. L. c. 176D, prohibiting unfair or deceptive acts or practices in the business of insurance, include general language providing that persons subject to the statute's mandates are not relieved from liability "under any other laws of this [C]ommonwealth." G. L. c. 176D, § 8. See *Dodd* v. *Commercial Union Ins. Co.*, 373 Mass. 72, 75-79 (1977) (G. L. c. 176D does not bar application of G. L. c. 93A to unfair or deceptive insurance acts or practices).[6] Significantly, language of similar import does not appear in G. L. c. 152. The absence

[5]In light of our conclusion, we need not consider whether the relationship among the plaintiffs, National Union Fire Insurance Company, and AIG Claim Services, Inc., constituted "trade or commerce" within the meaning of G. L. c. 93A. See G. L. c. 93A, § 1 (*b*) (defining "trade" and "commerce"). See generally *Poznik* v. *Massachusetts Med. Professional Ins. Ass'n*, 417 Mass. 48, 52-53 (1994) (transactions of insurance association motivated by legislative mandate, not business or personal reasons, and did not constitute "trade or commerce" within meaning of G. L. c. 93A); *Manning* v. *Zuckerman*, 388 Mass. 8, 13-15 (1983) (disputes arising from employment relationship, such as for wrongful termination, are not cognizable under G. L. c. 93A).

[6]In 1979, the Legislature rewrote G. L. c. 93A, § 9 (1), explicitly to allow a private right of action for violations of G. L. c. 176D, § 3. St. 1979, c. 406, § 1. Section 9 (1) provides, in pertinent part, that "any person whose rights are affected by another person violating the provisions of [G. L. c. 176D, § 3 (9),] may bring an action in the superior court" for relief under G. L. c. 93A.

of such language is not surprising, given that the comprehensive statutory framework of G. L. c. 152 provides injured workers with detailed procedures for addressing controversies pertaining to the payment of benefits and to the manner in which claims for benefits are handled, and sets forth its own remedial scheme for addressing noncompliance by employers and insurers. See, e.g., G. L. c. 152, § 7; G. L. c. 23E, § 3. See also *Cabot Corp.* v. *Baddour*, 394 Mass. 720, 724-726 (1985) (no G. L. c. 93A claim by defrauded purchaser of securities because G. L. c. 110A, Uniform Securities Act, intended to provide comprehensive regulation of securities field)[7]; *Reiter Oldsmobile, Inc.* v. *General Motors Corp.*, 378 Mass. 707, 711 (1979) (remedies sought under G. L. c. 93A not available where G. L. c. 93B was self-contained statute prescribing specific remedies for its violation). There is no concurrent coverage of a common subject matter between G. L. c. 152, on the one hand, and G. L. c. 176D and G. L. c. 93A, on the other hand. Contrast *Dodd* v. *Commercial Union Ins. Co.*, *supra.* The plaintiffs assert that the remedies provided under the Act to address the defendants' alleged misconduct lack "teeth." However, the plaintiffs' concern is a matter for consideration by the Legislature, not this court. See *Boduch* v. *Aetna Life & Cas. Co.*, 26 Mass. App. Ct. 462, 468 n.5 (1988), citing 2A A. Larson, Workmen's Compensation § 68.34 (c) (1988).

2. *Exclusivity provision of G. L. c. 152, § 24.* In his order allowing the defendants' motion to dismiss, the judge stated that the exclusivity provision of G. L. c. 152, § 24, precluded the plaintiffs' action because it evidenced a legislative intent that the remedies for violations of G. L. c. 152 should remain within the workers' compensation system and "should be exclusive of all other common law and statutory remedies," quoting *Kelly* v. *Raytheon, Inc.*, 29 Mass. App. Ct. 1000, 1002 (1990). See *St. Germaine* v. *Pendergast*, 411 Mass. 615, 627 (1992). See also *Boduch* v. *Aetna Life & Cas. Co.*, *supra* at 466-467. While we agree with the judge that the remedies provided by G. L. c. 152

No such private right of action under G. L. c. 93A was explicitly allowed for alleged violations of G. L. c. 152 or G. L. c. 23E.

[7]After our decision in *Cabot Corp.* v. *Baddour*, 394 Mass. 720 (1985), the Legislature amended G. L. c. 93A to make it expressly applicable to certain securities transactions. See St. 1987, c. 664.

are exclusive of all other relief in cases within its purview,[8] the exclusivity provision in § 24 is not germane here.[9] General Laws c. 152, § 24, provides, in pertinent part: "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right . . . ." The sole basis for the plaintiffs' cause of action is alleged unfair or deceptive business practices by the defendants in violation of G. L. c. 176D and G. L. c. 93A. The plaintiffs are not claiming any violations of their rights under common law or under the law of another jurisdiction.

The opinions of the Appeals Court in *Boduch* v. *Aetna Life & Cas. Co., supra,* and *Kelly* v. *Raytheon, Inc., supra,* are not directly on point. In the *Boduch* case, the plaintiff, who had sustained a work-related back injury, brought an action against her employer's insurer, alleging that as a result of the insurer's unfair, deceptive, and tortious conduct in handling her claim for compensation benefits, she suffered severe emotional distress for which she sought to recover damages under G. L. c. 93A, independent of her rights under G. L. c. 152. See *Boduch* v. *Aetna Life & Cas. Co., supra* at 463-464. The Appeals Court concluded that the insurer, in receiving and investigating the employee's claim for benefits, was acting in furtherance of the goals of G. L. c. 152, and thus was protected from the employee's action by the exclusivity provision of § 24. See *id.* at 466-467. In the *Kelly* case, the plaintiff, who suffered an emotional breakdown following the termination of her position, brought an action against her employer's insurer, alleging that as a result of the insurer's failure to pay her the full compensa-

---

[8]Claims for personal injuries that are not within the purview of G. L. c. 152 include defamation, see *Foley* v. *Polaroid Corp.,* 381 Mass. 545, 551-552 (1980), malicious prosecution, see *id.* at 552-553, civil rights violations, see *id.* at 553, and false imprisonment, see *Doe* v. *Purity Supreme, Inc.,* 422 Mass. 563, 568 (1996). Therefore, these claims are not barred by the exclusivity provision of G. L. c. 152, § 24.

[9]An appellate court may uphold a correct ruling below on a ground different from that relied on by the judge. See *Kelly* v. *Avon Tape, Inc.,* 417 Mass. 587, 590 (1994), and cases cited.

tion to which she was entitled, she suffered severe emotional distress for which she sought to recover damages under G. L. c. 93A. See *Kelly* v. *Raytheon, Inc.*, *supra* at 1000-1001. Relying on its *Boduch* decision, the Appeals Court again concluded that the employee's action was barred by the exclusivity provision of § 24 which, in conjunction with the provisions of G. L. c. 152 setting forth penalties for delayed payments, demonstrated a legislative intent that remedies provided therein "should remain within the system and should be exclusive of all other common law and statutory remedies." *Kelly* v. *Raytheon, Inc.*, *supra* at 1002. In both of these cases, the injured employees sought redress for the purported infliction of emotional distress, and not solely for statutory violations. The reason why the plaintiffs here cannot successfully assert a cause of action under G. L. c. 93A is not that they have waived their right to do so pursuant to G. L. c. 152, § 24. It is because the "deceptive and unfair business practices" alleged by the plaintiffs must be addressed through the comprehensive statutory framework of G. L. c. 152.

3. *Exemption under G. L. c. 93A, § 3.* We comment briefly on the exemption from liability set forth in G. L. c. 93A, § 3. The provisions of G. L. c. 93A do not apply to "transactions or actions *otherwise permitted* under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States" (emphasis added). G. L. c. 93A, § 3. The burden of proving the applicability of the exemption is on the person claiming it. *Id.* In essence, the exemption enunciated in § 3 is an affirmative defense that must be asserted in the pleadings and proved at trial. See *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 96-97 (1983) (whether actions complained of constitute permitted conduct and come within statutory exemption initially matter for determination at trial); *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 52-53 (1979) (same); *Bierig* v. *Everett Sq. Plaza Assocs.*, 34 Mass. App. Ct. 354, 367 n.13 (1993) (party properly raised "permitted act" exemption as affirmative defense in pleadings). Here, the only pleading that was filed was the plaintiffs' complaint. Nonetheless, we have recognized that "[i]f it is evident from the allegations of the complaint alone that the defendant is

entitled to [an affirmative defense], the matter may be decided by means of a motion to dismiss." *Gutierrez* v. *Massachusetts Bay Transp. Auth.*, 437 Mass. 396, 404 (2002).

In light of our conclusion that the procedures and remedies set forth in the Act's comprehensive statutory scheme governed the plaintiffs' claims against the defendants, and, consequently, that the Superior Court did not have subject matter jurisdiction over the plaintiffs' cause of action, the exemption set forth in G. L. c. 93A, § 3, is not applicable. The judge had no authority to determine whether the defendants were entitled to the benefit of that statutory provision. If the applicability of the § 3 exemption *was* an issue, it is not evident from the allegations in the plaintiffs' complaint that the defendants would be able to prevail on a motion to dismiss by qualifying for such exemption. "The burden [on a party claiming the exemption] is a difficult one to meet. To sustain it, a defendant must show more than the mere existence of a related or even overlapping regulatory scheme that covers the transaction. Rather, a defendant must show that such scheme affirmatively *permits* the practice which is alleged to be unfair or deceptive" (emphasis in original). *Bierig* v. *Everett Sq. Plaza Assocs.*, *supra* at 367 n.14, quoting Greaney, Chapter 93A Rights and Remedies § 6-4 (1992). See *Cablevision of Boston, Inc.* v. *Public Improvement Comm'n of the City of Boston*, 38 F. Supp. 2d 46, 61 (D. Mass.), aff'd, 184 F.3d 88 (1st Cir. 1999). The unfair and deceptive practices specifically alleged by the plaintiffs in their complaint are the defendants' computation of "average weekly wages" without the inclusion of the value of certain fringe benefits, and the defendants' misrepresentation of the amount of workers' compensation benefits to which the plaintiffs were entitled.[10] Neither the applicable statutes, nor decisions by the reviewing board of the department, suggest that the defendants' alleged conduct was otherwise permitted by the workers' compensation scheme. See G. L. c. 152, § 1 (1); G. L. c. 149, §§ 26, 27. See also *Kelly* v. *Modern Cont.*, 17 Mass. Workers' Comp. Rep. 172, 175 (2003); *McCarty* v. *Wilkinson & Co.*, 11 Mass. Workers' Comp. Rep.

---

[10]Contrary to the defendants' assertions, the plaintiffs are not contesting the defendants' rights to challenge benefits determinations and to appeal from adverse decisions of the department.

285, 289 (1997)[11]; *Lyons* v. *Fontaine Bros.*, 4 Mass. Workers' Comp. Rep. 398, 399 (1990); *Machado* v. *Joseph B. Fay Co.*, 3 Mass. Workers' Comp. Rep. 38, 39-40 (1989).

*Judgment affirmed.*

---

[11]We have now concluded that the inclusion of certain fringe benefits (employer payments into health and welfare plans, pension plans, and supplemental employment benefits) in the determination of "average weekly wages" for a unionized employee working on an all-union public works project is required under G. L. c. 152, § 1 (1). See *McCarty's Case, ante* 361, 368 (2005).