NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-987                                              Appeals Court

        GARY P. SILVA  vs.  STEADFAST INSURANCE COMPANY.


                        No. 14-P-987.

        Hampden.      March 5, 2015. - August 7, 2015.

            Present:  Cypher, Kafker, & Green, JJ.

Practice, Civil, Summary judgment.  Insurance, Unfair act or
     practice, Settlement of claim.  Consumer Protection Act,
     Insurance, Offer of settlement, Unfair act or practice,
     Consumer, Businessman's claim.


     Civil action commenced in the Superior Court Department on
November 14, 2012.

     The case was heard by Constance M. Sweeney, J., on motions
for summary judgment.


     Mark J. Albano for the plaintiff.
     Timothy O. Egan for the defendant.


     KAFKER, J.  Gary P. Silva appeals from the entry of summary

judgment in favor of Steadfast Insurance Company (Steadfast).

In his complaint, Silva claimed that Steadfast violated G. L.

c. 176D, § 3(9), and G. L. c. 93A, §§ 2 and 11, by failing to

effectuate a prompt, fair, and equitable settlement of earlier

litigation arising out of damage to Silva's business caused by a

botched demolition project by Associated Building Wreckers, Inc. (Associated), a company insured by Steadfast. Silva maintains that Steadfast should have made a settlement offer after judgment entered in the earlier litigation even though (1) Silva was appealing multiple aspects of that judgment and seeking to expand the scope of both liability and damages, and (2) postjudgment motions by both Silva and Steadfast to recalculate the amount of damages were ultimately allowed. We affirm.

Background. The city of Holyoke hired Associated to demolish an abandoned building that was adjacent to Silva's property, on which Silva operated his auto body and repair business, S&L Automotive. During demolition, which took place on January 19, 2006, the building collapsed onto Silva's property and severely damaged his business. Steadfast was Associated's liability insurer at the time. On December 29, 2006, Silva brought suit in Superior Court against Associated seeking, among other things, damages for his business and property and for personal injuries.[1] At the close of Silva's

---

[1] Silva's complaint set forth seven counts: Count I, a negligence and breach of contract claim for property damage and business loss; Count II, a negligence and breach of contract claim for his personal injuries; Count III, a negligence claim by Silva's wife for loss of consortium (which was dismissed by stipulation before trial); Count IV, a trespass claim for his injuries and damages; Count V, a nuisance claim for his injuries and damages; Count VI, an ultra-hazardous activity/strict liability claim for his injuries and damages; and Count VII, a claim under G. L. c. 93A, §§ 2 and 11, for injuries and damages.

evidence in that trial, the judge directed a verdict for Associated on Silva's nuisance, strict liability, and G. L. c. 93A claims. At the conclusion of the trial on June 21, 2010, the judge awarded Silva $366,607.36 on his first breach of contract claim,[2] including damages for building repair, removal, and demolition costs, along with $10,000 for personal property damage. The judge ruled in favor of Associated on Silva's claims for negligence, personal injury, and trespass. Associated did not appeal. Silva appealed the directed verdicts, his trespass claim, and the amount of damages awarded. See Silva v. Associated Bldg. Wreckers, Inc., 82 Mass. App. Ct. 1106 (2012). The appeal was ultimately unsuccessful and the judgment was affirmed, resulting in an execution on the judgment issuing to Silva on November 9, 2012, in the amount of $671,216.74. Between the entry of the judgment on June 21, 2010, and the execution issued in November, 2012, Silva made no demands on Associated or Steadfast to pay the judgment or any

---

[2] In Silva's appeal from that judgment, this court explained in an unpublished decision issued pursuant to our rule 1:28 that "[t]he contract between [Associated] and the city provided that [Associated] would restore any structures and items damaged as a result of the demolition. At the beginning of the trial, the parties stipulated that [Silva] was a third-party beneficiary of this contract. [Associated] conceded that it was responsible for the damage to the plaintiff's building." Silva v. Associated Bldg. Wreckers, Inc., 82 Mass. App. Ct. 1106 (2012).

portion thereof, nor were any offers made by Steadfast to settle the claims.

On November 14, 2012, Silva filed the instant action, alleging that Steadfast violated G. L. c. 176D, § 3(9), and G. L. c. 93A, §§ 2 and 11, by failing to effectuate a prompt, fair, and equitable settlement after the original judgment in Silva's favor entered on June 21, 2010.

On December 17, 2012, Associated filed a motion for relief from judgment in the underlying action pursuant to Mass.R.Civ.P. 60(a), 365 Mass. 828 (1974), because, it contended, the judgment failed to apply the setoff to the judgment amount provided for by the judge in his written findings. Associated's motion was allowed over Silva's objection.[3] The judge found that Silva had already "received insurance payments [from Steadfast] in the amount of $186,464, and [Associated] may offset the award by the amount received [from] the insurance company." Silva v. Associated Bldg. Wreckers, Inc., 87 Mass. App. Ct. 1104 (2015). Later, Silva moved to amend the judgment to add additional costs, and that motion was allowed in part. On March 5, 2013, an amended judgment of $342,201.53 entered for Silva, which was comprised of the principal amount of $180,143.36, with

---

[3] Silva appealed the application of the setoff, and the motion judge's decision was ultimately affirmed by this court. Silva v. Associated Bldg. Wreckers, Inc., 87 Mass. App. Ct. 1104 (2015).

prejudgment interest of $75,660.21, postjudgment interest of $84,415.18, and costs of $1,982.79.  On March 28, 2013, Steadfast paid Silva the full amount of the March 5, 2013, judgment.

In October, 2013, a judge of the Superior Court held a hearing on the parties' cross motions for summary judgment in the instant case.  In January, 2014, the judge granted summary judgment to Steadfast.  The judge ruled that Steadfast had not violated G. L. c. 176D because "Silva rendered uncertain the total liability of Steadfast's insured by appealing the June 21, 2010, judgment."  Judgment entered in March, 2014, dismissing Silva's complaint, and Silva filed a timely appeal.

Discussion.  1.  Standard of review.  "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as matter of law." Kanamaru v. Holyoke Mut. Ins. Co., 72 Mass. App. Ct. 396, 398 (2008), citing Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002).  We view the facts in the light most favorable to Silva, against whom judgment was entered, see ibid., to determine whether he "has 'no reasonable expectation of proving an essential element' of his case."  Bobick v. United States Fid. & Guar. Co., 439 Mass. 652, 659 (2003), quoting from Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).  "Our review is de novo," Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.,

469 Mass. 813, 820 (2014), and "we may consider any ground apparent on the record that supports the result reached in the lower court." Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass. App. Ct. 955, 956 (1995), quoting from Gabbidon v. King, 414 Mass. 685, 686 (1993).

2.  Relationship between G. L. c. 93A and G. L. c. 176D. General Laws c. 93A, the Massachusetts Consumer Protection Act, protects consumers and businesses alike from unfair business practices that are "immoral, unethical, oppressive, or unscrupulous; or within the bounds of some statutory, common-law or other established concept of unfairness." Ellis v. Safety Ins. Co., 41 Mass. App. Ct. 630, 640 (1996).  Similarly, "[G. L.] c. 176D, § 3, prohibits 'unfair or deceptive acts or practices in the business of insurance,' and § 3(9) enumerates acts and omissions that constitute unfair claim settlement practices."  Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 564 (2001).  However, c. 176D, § 3, does not itself provide a private right of action.  See Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 75 (1977), superseded in part by statute as stated in Wheatley v. Massachusetts Insurers Insolvency Fund, 465 Mass. 297, 301 n.7 (2013); Morrison v. Toys "R" Us, Inc., Mass. 59 Mass. App. Ct. 613, 617 n.7 (2003), S.C., 441 Mass. 451 (2004); Adams v. Liberty Mut. Ins. Co., 60 Mass. App. Ct. 55, 63 n.14 (2003).  To proceed against an insurer who has violated G. L.

c. 176D, § 3(9), a plaintiff must bring a claim under G. L. c. 93A, § 9 or § 11.  In the present case, Silva has brought his claim pursuant to c. 93A, § 11, which governs claims by persons acting in a business context.  See Frullo v. Landenberger, 61 Mass. App. Ct. 814, 821 (2004).

It is important to recognize at the outset of our analysis that G. L. c. 93A, § 11, does not expressly incorporate violations of G. L. c. 176D, § 3(9), in contrast to c. 93A, § 9, which has been amended to allow consumers to bring c. 93A claims alleging violations of c. 176D without regard to whether those violations constitute an unfair business practice under c. 93A, § 2.  See Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 754 (1993); DiVenuti v. Reardon, 37 Mass. App. Ct. 73, 79 (1994).  That being said, if a business establishes a relevant "business context" between it and the insurer as a prerequisite for liability under c. 93A, §§ 2 and 11, "a judge may nonetheless rely on a c. 176D violation as evidence of an unfair business practice [for the purpose of] § 11."  Northern Security Ins. Co. v. R.H. Realty Trust, 78 Mass. App. Ct. 691, 696 n.12 (2011).  However, "[t]here is no one-to-one relationship between [c.] 176D and [c.] 93A" in the c. 93A, § 11, context, as "violations of chapter 176D run the gamut from those that are somewhat technical to those that are gravely offensive.  Given this range, conduct that abridges the unfair claim practice

statute may or may not abridge the unfair trade practice statute." Continental Ins. Co. v. Bahnan, 216 F.3d 150, 157 (1st Cir. 2000). This distinction can be important when determining whether an alleged claim settlement practice provides grounds sufficient to overcome a motion for summary judgment in a c. 93A, § 11, action.

3. Classification of Silva's G. L. c. 93A claim. Before reaching the substance of Silva's appeal as it relates to G. L. c. 176D, we first address Steadfast's argument that Silva's G. L. c. 93A claim should be read as a claim under c. 93A, § 9 -- the branch of c. 93A that provides a right of action to individual consumers -- not c. 93A, § 11. If Silva's claim is determined to fall under the province of c. 93A, § 9, Steadfast argues, the claim should have been dismissed on the ground that Silva failed to send Steadfast a demand letter in compliance with the statute. See Spilios v. Cohen, 38 Mass. App. Ct. 338, 342 (1995) ("demand letter is a condition precedent to commencing an action under G. L. c. 93A, § 9"). Steadfast asserts that Silva's claim falls under c. 93A, § 9, because Silva pursued both personal and business damages. Steadfast also contends that it is unprecedented for third-party claimants in an insurance context to file a claim under c. 93A, § 11, given the lack of privity between third-party claimants and insurers. We are unpersuaded by Steadfast's argument.

The first prong of Steadfast's argument is readily disposed of given that current case law does not prevent Silva, as a matter of law, from bringing suit under G. L. c. 93A, § 11, simply because he pursued damages relating to both his personal and business injuries.  See Begelfer v. Najarian, 381 Mass. 177, 190-191 (1980) (inquiry whether § 11 "business context" has been established is fact-specific, requiring consideration of "the circumstances of each case").[4]  Moreover, Silva, Associated, and Steadfast were all engaged in trade or commerce during the claims, incidents, and transactions at issue.  Silva's automotive repair business was damaged by Associated's demolition business, which was insured by Steadfast's insurance business.

Steadfast's third-party claimant argument is equally unpersuasive.  In Clegg v. Butler, 424 Mass. 413, 418 (1997) (Clegg), the Supreme Judicial Court affirmed the right of third-party claimants to file suit against insurers under G. L. c. 93A, though this interpretation was based on the statutory language of c. 93A, § 9, not of §§ 2 and 11.  "While the majority of c. 93A actions [relating to c. 176D] involve an

---

[4] This analysis includes "the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties. . . .  Other relevant factors are whether similar transactions have been undertaken in the past, whether the transaction is motivated by business or personal reasons . . . , and whether the participant played an active part in the transaction."  Begelfer v. Najarian, 381 Mass. at 191.

insured's attempt to enforce its rights against its own insurer, 'the specific duty contained in subsection [3(9)](f) [of c. 176D] is not limited to those situations where the plaintiff enjoys contractual privity with the insurer.'" Pacific Indem. Co. v. Lampro, 86 Mass. App. Ct. 60, 64 (2014), quoting from Clegg, supra at 419.

Although in Clegg the court interpreted G. L. c. 93A, § 9, there are also cases that demonstrate the ability of third-party claimants to bring suit under c. 93A, § 11. See R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass. 66, 68-72 (2001) (R.W. Granger & Sons) (breach of contract claim between subcontractor and general contractor; after judgment entered in favor of subcontractor, surety for general contractor was liable to subcontractor pursuant to G. L. c. 149, § 29, and violated G. L. c. 93A, §§ 2 and 11); Adams v. Liberty Mut. Ins. Co., 60 Mass. App. Ct. at 63 n.14 (plaintiff chiropractor's third-party claim against workers' compensation insurer "adequately constitute[d] a claim for relief under G. L. c. 93A, § 11"). Moreover, the goal behind G. L. c. 176D -- to facilitate settlement of insurance claims -- "is equally desirable whether the plaintiff is an insured or a third-party claimant," Clegg, supra at 419, and whether the plaintiff is an individual consumer or a business. We discern no basis for a bright-line

rule that would prohibit third-party claimants in the c. 176D context from filing claims pursuant to c. 93A, § 11.

4. Alleged violation of G. L. c. 176D, § 3(9). "The duty of fair dealing in insurance settlement negotiations is established by statute under G. L. c. 176D, § 3(9)." Clegg, supra at 419. The over-all purpose of this statute is to "encourage the settlement of insurance claims . . . and discourage insurers from forcing claimants into unnecessary litigation to obtain relief." Ibid. Of the fourteen insurance settlement practices described by c. 176D, § 3(9), at issue here is subsection (f), which requires insurance companies "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." G. L. c. 176D, § 3(9)(f), inserted by St. 1972, c. 543, § 1.

In evaluating the settlement practices here, we stress that Silva objects only to Steadfast's postverdict settlement practices.[5] Indeed neither party has addressed the $186,464 insurance payment made before trial in the underlying case, which was the subject of a prior decision of this court. Silva v. Associated Bldg. Wreckers, 87 Mass. App. Ct. 1104. We

---

[5] Though less common than their pretrial counterparts, G. L. c. 176D violations arising out of postjudgment settlement practices have been recognized. See Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 674 n.3 (1983) (discussing possibility of posttrial violation); R.W. Granger & Sons, 435 Mass. at 78-79 (no error in ruling that defendant's postverdict conduct constituted a violation).

therefore only consider whether Steadfast's postverdict settlement practices are actionable. See R.W. Granger & Sons, 435 Mass. at 69 ("The judge limited the G. L. c. 93A claim . . . to events 'occurring subsequent to' the jury's . . . verdict").

Silva argues that he demonstrated as a matter of law that Steadfast violated G. L. c. 176D, § 3(9)(f), when it failed to effectuate a settlement between June 21, 2010, when judgment originally entered for Silva, and March 28, 2013, when Steadfast finally paid the judgment. Steadfast responds that its liability only became "reasonably clear" on March 5, 2013, after the resolution of Silva's appeals and the parties' respective motions to amend the judgment.

"Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [G. L.] c. 93A violation is a question of law." Chervin v. Travelers Ins. Co., 448 Mass. 95, 112 (2006) (citation omitted). See R.W. Granger & Sons, 435 Mass. at 73. We conclude that Steadfast's postjudgment actions fell outside those boundaries and therefore Steadfast was entitled to summary judgment as a matter of law.

As directed by G. L. c. 176D, § 3(9)(f), insurers must attempt to settle claims once liability has become reasonably clear. For this purpose, "liability encompasses both fault and

damages." Clegg, 424 Mass. at 421. See R.W. Granger & Sons, 435 Mass. at 75. Whether fault and damages were reasonably clear here postjudgment is not a simple inquiry. When judgment entered in Silva's favor on June 21, 2010, Silva did not seek to enforce the judgment or make a settlement request or demand for full or partial payment but, rather, appealed the judgment on multiple grounds, thereby opening up both the scope of liability and the amount of damages. Associated, however, did not file an appeal, so some amount of liability and damages had, at that point, been established. Further complicating matters, Steadfast had previously paid Silva $186,464, the basis of the offset that was the subject of Silva's second round of appellate litigation. Between entry of the original judgment on June 21, 2010, and the execution issued in November, 2012, Steadfast made no additional settlement offers. Thus, the question is whether Steadfast's failure to make a postjudgment settlement offer constituted a violation of G. L. c. 93A, §§ 2 and 11. We conclude that Steadfast did not as a matter of law engage in unfair and deceptive practices pursuant to c. 93A, §§ 2 and 11, in these circumstances.

We so conclude because the amount of damages was not reasonably clear once Silva chose to appeal multiple claims previously found to be without merit by the trial judge. See Clegg, supra at 421. The subsequent appellate and postjudgment

litigation confirmed the reasonableness of Steadfast's actions, as Silva's claims were once again determined to be without merit and the amount of damages required multiple adjustments in the trial court.  Cf. Jet Line Servs., Inc. v. American Employers Ins. Co., 404 Mass. 706, 717 (1989) ("As a general rule, an insurance company does not act unfairly or deceptively within the meaning of G. L. c. 93A, § 2, with respect to a claim made under a policy of insurance simply by making a legally correct disclaimer of coverage"); Ben Elfman & Sons, Inc. v. Home Indem. Co., 411 Mass. 13, 21 (1991) ("Because we have decided that the defendant rightfully refused to pay interest under the policy, its actions in that regard do not constitute unfair and deceptive acts").

Our holding is consistent with established Massachusetts case law.  In R.W. Granger & Sons, 435 Mass. at 75-76, the Supreme Judicial Court held there was a postverdict violation of G. L. c. 176D, § 3(9)(f), within the G. L. c. 93A, §§ 2 and 11, context where the defendant insurer argued that liability was not reasonably clear given that the amount of attorney's fees was still disputed.  The court found the defendant's argument unpersuasive when comparing the potential amount of "reasonable attorney's fees" to the certainty of the jury verdict and interest.  In addition, the plaintiff had made a demand for payment within a month of the verdict, and the defendant

insurer's tardy settlement offer "was neither 'fair' nor 'equitable.'" Id. at 76.

The court reached a similar conclusion in Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486 (2012), a G. L. c. 93A, § 9, case involving catastrophic injuries, including permanent paraplegia. Liability was certain and the postjudgment settlement offer in response to the demand letter was "not only unreasonable, but insulting." Id. at 494. The actions of Silva and Steadfast in the case at bar are in stark contrast to both R.W. Granger & Sons and Rhodes, as the amount of damages here was uncertain once Silva appealed the judgment in the underlying litigation. The fact that both Silva and Steadfast later filed successful motions to amend the judgment amount gives further credence to the judge's conclusion here that the amount of damages was not "reasonably clear" until March of 2013.

These differences also lead us to distinguish this case from those that hold "[a]n insurer's statutory duty to make a prompt and fair settlement offer does not depend on the willingness of a claimant to accept such an offer," Hopkins v. Liberty Mut. Ins. Co., 434 Mass. at 567, and "[e]ven excessive demands on the part of a claimant . . . do not relieve an insurer of its statutory duty to extend a prompt and equitable offer of settlement once liability and damages are reasonably clear." Bobick v. United States Fid. & Guar. Co., 439 Mass. at

662. While that maxim is true when both liability and damages are reasonably clear, in the instant case at least the amount of damages remained uncertain until the appeals and postjudgment motions were resolved. As such, the grant of summary judgment in favor of Steadfast was appropriate.

<u>Judgment dated March 12, 2014, affirmed</u>.